VARGO, APPELLEE, *v.* TRAVELERS INSURANCE COMPANY, INC., APPELLANT.

[Cite as Vargo *v.* Travelers Ins. Co. (1987), 34 Ohio St. 3d 27.]

28

(No. 87-216—Decided December 9, 1987.)

*Bailey, Byrum & Vieweg* and *John Preston Bailey,* for appellee.

*Arter & Hadden, Michael C. Zellers* and *Irene C. Keyse-Walker,* for appellant.

DOUGLAS, J. This instant cause poses two questions for our consideration. The first question is whether R.C. 313.19 impermissibly denies civil litigants due process of law by requiring fact-finders to accept, as a matter of law, the coroner's findings concerning the manner, mode and cause of death. The second issue is whether the trial court herein erred by permitting a medical expert to testify both beyond the scope of his expertise and with the aid of irrelevant statistical evidence.

As to the first question, appellee argues, and the court of appeals held, that R.C. 313.19 is constitutionally infirm because it both compels a fact-finder to accept the coroner's findings regarding the manner, mode and cause of the decedent's death, and because it clothes the coroner impermissibly with the power to make *ex parte* judicial determinations that are binding upon nonparties. We disagree with both of appellee's contentions.

R.C. 313.19 provides that:

"The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, *unless the court of common pleas* of the county in which the death occurred, after a hearing, *directs the coroner to change his decision as to such cause and manner and mode of death.*" (Emphasis added.)

Thus, the coroner's factual determinations shall be accepted unless, following a hearing, the common pleas court directs the coroner to change such determination.[3] Similarly, pursuant to R.C. 3705.04, the coroner may be compelled to show evidence supporting the facts contained within the death certificate *and* to issue an

---

[3] Although we recognize that the Eighth District Court of Appeals recently found the review procedure set forth within R.C. 313.19 void for vagueness, *Goldsby* v. *Gerber* (1987), 31 Ohio App. 3d 268, 31 OBR 553, 511 N.E. 2d 417, paragraph two of the syllabus, this court has not yet specifically addressed that question. Further, pursuant

amended death certificate when so required. Statutes which create conclusive presumptions afford no such remedy opportunities.

Furthermore, this court has never interpreted[4] R.C. 313.19 as conclusively setting forth the manner, mode and cause of death. Instead, this court has found that "* * * [a] coroner's verdict as to the cause of death * * * *is entitled to much weight * * *"* (emphasis added), *State* v. *Manago* (1974), 38 Ohio St. 2d 223, 227, 67 O.O. 2d 291, 293, 313 N.E. 2d 10, 13, and has approved of language that " "* * * the death certificate * * * [is] admissible as prima facie evidence of the facts therein stated.' " *Perry* v. *Indus. Comm.* (1954), 160 Ohio St. 520, 524, 52 O.O. 387, 388, 117 N.E. 2d 34, 37. Appellee has not persuaded us to alter our position.

Further, it must be noted that while the coroner's factual findings are not conclusive, neither are they a nullity. The coroner is a medical expert rendering an expert opinion on a medical question. *State* v. *Cousin* (1982), 5 Ohio App. 3d 32, 35, 5 OBR 34, 38, 449 N.E. 2d 32, 37. Therefore, to rebut the coroner's determination, as expressed in the coroner's report and the death certificate, competent, credible evidence must be presented.

Accordingly, we hold that the coroner's factual determinations concerning the manner, mode and cause of the decedent's death, as expressed in the coroner's report and death certificate, create a non-binding, rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary.

Moreover, contrary to appellee's position that R.C. 313.19 permits the coroner to conduct an unconstitutional *ex parte* judicial determination, we believe that R.C. 313.19 merely recognizes the quasi-judicial character of the coroner's statutorily mandated duty to ascertain, in certain cases, a person's cause of death. As this court stated in *State, ex rel. Harrison,* v. *Perry* (1925), 113 Ohio St. 641, 644-645, 150 N.E. 78, 79, the coroner's duties "* * * become quasi-judicial in character when he is required to make a finding upon evidence as to whether or not a person whose body is found in the county came to his death by unlawful or suspicious means 'and proceed to inquire how the deceased came to his death, whether by violence from any other person or persons, * * * and all circumstances relating thereto.' " See R.C. 313.15 and 313.17. Thus, as the coroner is, by statute, required to engage in quasi-judicial activity when inquiring into the cause of death, the fact that such activity is conducted without the joinder of all possible parties does not make R.C. 313.19 *per se* unconstitutional.

Further, due process, which requires only the opportunity to be heard at a meaningful time and in a mean-

---

to R.C. Chapter 2721, specifically Sections 2721.02, 2721.05(C), 2721.06, 2721.10 and 2721.13, the court of common pleas has jurisdiction to both hear and determine the type of factual questions raised in an R.C. 313.19 action. Additionally, where, as here, the coroner's determination impacts the size of the estate, the administrator or the executor would certainly be sufficiently interested to bring such an action on behalf of the estate.

[4] We are guided in our interpretations of legislative enactments by the legal principle that "* * * courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450. See, also, *Lyle Constr., Inc.* v. *Div. of Reclamation* (1987), 34 Ohio St. 3d 22, 24, 516 N.E. 2d 209, 211.

ingful manner, compels no more process than that which already exists in the instant cause. Neither the coroner's report nor the death certificate is conclusive concerning the manner, mode or cause of death. Both may be changed through the use of competent, credible evidence, since the coroner's findings are, in essence, a determination of a medical expert on a medical question. See *State* v. *Cousin*, *supra*. Due process requires no more.

Thus, we find that R.C. 313.19 suffers from no constitutional infirmities. Accordingly, we hold that R.C. 313.19 does not deprive a civil litigant of due process of law. The statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode and cause of the decedent's death.

Notwithstanding the above, appellee argues that the trial court impermissibly applied R.C. 313.19 in a conclusive manner when it instructed the jury to accept the coroner's report and findings as to the manner, mode and cause of the decedent's death. Again, we do not agree. The trial court instructed the jury as follows:

"* * * I charge you, as a matter of law, that the cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's report and in the death certificate, filed in this case, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, which evidence may be considered by you in reaching your decision in this case."

While the above instruction may appear to require the result espoused by appellee, the remainder of the charge to the jury dispels such a conclusion. We cannot view the above charge in isolation. See *State* v. *Price* (1979), 60 Ohio St. 2d 136, 14 O.O. 3d 379, 398 N.E. 2d 772, paragraph four of the syllabus; *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, 44 O.O. 2d 18, 238 N.E. 2d 563, paragraph three of the syllabus. Instead, we must look to the jury charge as a whole when determining whether the trial court committed reversible error. *Price, supra; Snyder, supra.*

Upon review of the entire charge to the jury, it is clear that the jury was not instructed as appellee asserts. Conversely, the jury was instructed to independently weigh and evaluate all of the witnesses and the evidence in making its determination. The trial court did not, as appellee contends, direct the jury to blindly accept the coroner's findings as the definitive statement concerning the manner, mode or cause of the decedent's death.[5] Accordingly, we find appellee's contentions without merit.

The second issue before this court is whether the trial court erred by permitting one of appellant's medical experts to testify concerning matters purportedly beyond the scope of his expertise and to testify with the aid of irrelevant statistical evidence.

At trial, the videotaped deposition of Dr. Arthur E. Van Dyke, a cardiologist, was played for the jury. Dr. Van Dyke testified that one basis for his opinion regarding when decedent's

---

[5] As the trial court herein did not apply R.C. 313.19 conclusively against appellee, an argument may be raised that appellee has no standing to question the constitutionality of such statute. She was never aggrieved by its enforcement. However, we believe that given the potential facial invalidity of R.C. 313.19, appellee has sufficient interest in the instant cause to bring this constitutional question before this court.

heart attack occurred was the manner in which the decedent operated his vehicle. Additionally, Dr. Van Dyke testified, by utilizing statistical data totally unrelated to either the decedent or the accident, that the odds were statistically much greater that the decedent had died from a heart attack of separate origin, than from a heart attack induced by the trauma of an automobile accident.

Appellant argues that, notwithstanding the propriety of Dr. Van Dyke's testimony, appellee has waived any objections to such testimony by failing to raise such objections at the deposition. We disagree.

Objections to videotaped testimony are governed by C.P. Sup. R. 12(A)(15), which provides in part that "[o]bjections should be made prior to trial and all objections must be made before actual presentation of the videotape at trial. If an objection is made at trial which has not been waived pursuant to Civil Rule 32(D)(3) or previously raised and ruled upon, such objection shall be made before the videotape deposition is presented." In the instant cause, appellee timely raised the objection to Dr. Van Dyke's testimony at trial. Thus, the remaining question is whether appellee's objections are waived pursuant to Civ. R. 32(D)(3).

Civ. R. 32(D)(3) governs objections during depositions, and provides that "(a) [o]bjections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time." Thus, objections to the competency of a witness or the relevancy or materiality of testimony are not waived unless the *ground* for the objection could be

removed if presented at the time of the taking of the deposition. We find no waiver present herein.

At the trial, appellee objected to Dr. Van Dyke's testimony on both competency and relevancy grounds. Arguably, Dr. Van Dyke was not competent to testify regarding the erratic behavior of the decedent's car. Dr. Van Dyke's expertise is in medicine, not accident reconstruction. Further, statistical data totally unrelated to the accident at issue or the decedent was clearly irrelevant to the question of when the decedent suffered his heart attack. Inasmuch as no action could have been taken by appellant to remedy Dr. Van Dyke's alleged lack of qualifications to render an opinion concerning accident reconstruction or to establish a nexus between the statistical data and the decedent's death, the *grounds* for appellee's objections could not be removed at the deposition and the objections were not waived pursuant to Civ. R. 32(D)(3).

Appellant additionally argues that Dr. Van Dyke's testimony was not, in and of itself, grounds for reversal in the instant cause. We agree.

Initially, the admission of expert testimony, and the scope thereof, is within the discretion of the trial court. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 473-474, 21 O.O. 3d 285, 296, 424 N.E. 2d 568, 580-581. Thus, absent an abuse of that discretion, we will not alter the trial court's decision. *Id.* Assuming, for sake of argument, that the admission of Dr. Van Dyke's testimony constituted an abuse of the trial court's discretion, for such to be error, it must act to the material prejudice of the opposing party. Civ. R. 61; R.C. 2309.59. See, also, *Hallworth* v. *Republic Steel Corp.* (1950), 153 Ohio St. 349, 358-359, 41 O.O. 341, 345, 91 N.E. 2d 690, 695. Considering all the facts of

this case, we find no material prejudice to appellee by the trial court's admitting Dr. Van Dyke's testimony.

To determine if the complaining party, appellee herein, has been prejudiced by the admission or exclusion of evidence, we must determine that the jury would have reached a different conclusion had the improper evidence not been admitted. *Id.* Having thoroughly reviewed the record we conclude that the jury, absent the complained-of testimony, would not have come to a different conclusion.

Appellee had the opportunity to cross-examine each of appellant's medical experts. Dr. Van Dyke's competency, expertise and use of the statistical data were raised by the appellee and considered by the jury. Further, given the volume of medical testimony presented to the jury, it is inconceivable that Dr. Van Dyke's statements alone led the jury to its determination. Accordingly, we find that any error in the admission of portions of Dr. Van Dyke's testimony was "harmless" and not, as the court of appeals found, grounds for reversal.

The judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.