**[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 310.]**

THE STATE EX REL. BLAIR, APPELLANT, *v*. BALRAJ, CORONER, APPELLEE.

[Cite as *State ex rel. Blair v. Balraj*, 1994-Ohio-40.]

*Coroners—R.C. 313.12, 313.17 and 313.19, applied—Term "during legal intervention" in describing how death occurred is a purely descriptive term—Mandamus to compel coroner to delete phrase "during legal intervention" from coroner's verdict for cause of death—Declaratory judgment constitutes an adequate remedy that will preclude mandamus when the General Assembly has specified that the court of common pleas is the proper forum to challenge the coroner's decision.*

(No. 93-1353—Submitted February 22, 1994—Decided May 18, 1994.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 64980.

———————————

{¶ 1} Appellant Betty Blair's son died while in police custody. Appellee, Elizabeth K. Balraj, the Cuyahoga County Coroner, received notice that the death was by violent or sudden means and investigated, as required by R.C. 313.12. In her verdict, appellee stated the cause of death as "cervical compression * * * homicide—during legal intervention." Similarly, on a supplementary medical certification, appellee stated that the immediate cause of death was "cervical compression," and she described how the injury occurred as "cervical compression by police during legal intervention." Appellant requested appellee to delete the phrase, "during legal intervention," from her verdict. When appellee refused, appellant filed this mandamus action to compel her to do so, alleging that appellee has no authority to rule on legal responsibility for death, which is a legal judgment.

{¶ 2} Appellee filed a motion for summary judgment in which she argued that she has statutory authority to inquire into and describe the manner of death. Appellant opposed the motion, filing inter alia an affidavit of the Deputy Chief

Medical Examiner of Bexar County, Texas, in which he states that it is improper for a coroner to use the phrase, "during legal intervention," because it is a legal determination.

{¶ 3} The court of appeals found that "legal intervention" was a descriptive term contained in the Manual of the International Statistical Classification of Diseases, Injuries and Causes of Death, published by the World Health Organization, and that appellee is not precluded by statute from using such a descriptive term. The court of appeals also held that the Texas Deputy Chief Medical Examiner's affidavit did not create a genuine issue of fact, which would preclude granting a motion for summary judgment and, accordingly, granted the motion for summary judgment and denied the writ.

{¶ 4} The cause is before this court upon an appeal as of right.

————————————

*John W. Martin*, for appellant.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, *Michael P. Butler* and *Patrick J. Murphy*, Assistant Prosecuting Attorneys, for appellee.

————————————

**Per Curiam.**

{¶ 5} We affirm the judgment of the court of appeals.

{¶ 6} In her first proposition of law, appellant argues that R.C. Chapter 313 does not authorize the coroner to draw legal conclusions from the facts she ascertains, citing *State v. Cousin* (1982), 5 Ohio App. 3d 32, 5 OBR 34, 449 N.E.2d 32, in which the Court of Appeals for Seneca County, construing R.C. 313.19, stated:

"The mode or manner can refer to the surrounding physical mechanisms associated with the death, as for example, the thrust of a knife, the course of a bullet or the blow of a blunt instrument. Such things are intimately associated with the

causal chain leading to the physiological chains that resulted in death. However, this is as far as the assigned quality of expertise required for a coroner may go.

"The assigning of ultimate causes, human intents and criminal responsibility is a matter for a different agency of inquiry, and is ultimately the subject matter of judicial inquiry. To say that the coroner is empowered by R.C. 313.19 to forestall prosecution, prevent further inquiry by prosecutors and police and grand juries from indicting is to interpret the section far more broadly than is warranted or required. We would conclude that limiting the meaning of 'cause, manner and mode' to the immediate physical and physiological mechanisms involved in the death is fully compatible with the skills of the coroner, his required expertise and with the clearly evident necessities of the situation. As to human causation and criminal responsibility—these fall outside his area of expertise and to lend to his ventures into this area any degree of finality or presumption of correctness, we believe, goes far beyond the scope of the statute and is wholly inconsistent with the general patterns of law enforcement and justice." 5 Ohio App. 3d at 34, 5 OBR at 37, 449 N.E.2d at 35-36.

{¶ 7} Appellant argues that by determining that the death of appellant's son occurred "during legal intervention," the appellee stated a legal conclusion not authorized by law, according to *Cousin*. Appellee attempts to distinguish *Cousin* as simply holding that a coroner's verdict does not have *res judicata* effect on subsequent judicial inquiry into the cause of death. We find that *Cousin* is wrong insofar as it holds, or appears to hold, that a coroner is limited to describing only physical or physiological facts.

{¶ 8} R.C. 313.12 provides in part:

"When any person dies as a result of criminal or other violent means, by casualty, by suicide, or in any suspicious or unusual manner, * * * the physician called in attendance, or any member of an ambulance service, emergency squad, or law enforcement agency who obtains knowledge thereof arising from his duties,

shall immediately notify the office of the coroner of the *known facts concerning the time, place, manner, and circumstances of the death*, and any other information which is required pursuant to sections 313.01 to 313.22 of the Revised Code. * * *" (Emphasis added.)

{¶ 9} R.C. 313.17 provides in part:

"The coroner * * * may * * * proceed to inquire how the deceased came to his death, whether by violence to self or from any other persons, by whom, *whether as principals or accessories before or after the fact, and all circumstances relating thereto.*" (Emphasis added.)

{¶ 10} Finally, R.C. 313.19 states:

"The cause of death *and the manner and mode in which the death occurred*, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after hearing, directs the coroner to change his decision as to such cause and manner and mode of death." (Emphasis added.)

{¶ 11} Taken together, these three statutes facially contradict the *Cousin* court's assertion that the "manner and mode" language of R.C. 313.19 is limited to "physical and physiological mechanisms." To so state is to imply that R.C. 313.12's requirement to relate facts "concerning the time, place, manner, and circumstances of the death" is essentially meaningless, as is the coroner's inquiry pursuant to R.C. 313.17 as to who caused the death, together with all attendant circumstances.

{¶ 12} Moreover, we agree with the court of appeals below that appellee drew no legal conclusions in this case. Rather, she adequately demonstrated that the term "legal intervention" is derived from the World Health Organization's Manual of the International Statistical Classification of Diseases, Injuries, and Causes of Death (1977), and that as defined therein it is merely a descriptive term:

"Legal intervention [i]ncludes: injuries inflicted by the police or other law-enforcing agents, including military on duty, in the course of arresting or attempting to arrest law-breakers, suppressing disturbances, maintaining order, and other legal action[.]" *Id.* at 627.

{¶ 13} Appellant argues that Ohio law, not international manuals, must be the source of an Ohio coroner's authority. That is true, but nothing in Ohio law appears to preclude the use of such a manual, and insofar as the term "legal intervention" is set forth in the manual as a purely descriptive term, it appears entirely consistent with R.C. 313.12, 313.17, and 313.19. Accordingly, we reject appellant's first proposition of law.

{¶ 14} Second, appellant argues "during legal intervention" is an equivocal phrase, which could be interpreted to mean that the intervention was justifiable instead of just meaning "inflicted by the police." She suggests using clearer phrases: (1) "homicide—during arrest," or (2) "homicide—during apprehension." However, to prevail in mandamus, appellant must show that appellee has a clear duty to use appellant's preferred term over that chosen by appellee from the World Health Organization's Manual. Clearly, she has not and cannot make such a showing.

{¶ 15} Further, under her second proposition of law, appellant states that following the death of her son, the Mayor of Cleveland commissioned a study into police procedures, and that the advisory committee appointed cited a San Diego report of similar import, which appellant attaches to her brief. Appellee has filed a motion to strike the report on grounds it is evidence not contained in the record. Appellee's motion is well taken. S. Ct. Prac. R.V(1)(E) specifies the contents of the appendix to an appellant's brief. It does not provide for new evidence not considered in the court of appeals. Accordingly, we grant appellee's motion to strike the report.

**{¶ 16}** In her third proposition of law, appellant argues that appellee and other coroners are under a clear legal duty not to make legal conclusions in their verdicts, and when they do, mandamus will compel them to stay within the scope of their authority. The court of appeals held that appellee's use of the phrase, "during legal intervention," is a discretionary act which mandamus may not control, citing *Goldsby v. Gerber* (1987), 31 Ohio App. 3d 268, 31 OBR 553, 511 N.E.2d 417, in which the Court of Appeals for Cuyahoga County held that a person may not compel the county coroner to delete a suicide finding from a death certificate by an action in mandamus, or by action seeking declaratory or injunctive relief.

**{¶ 17}** We find *Goldsby* to be correct insofar as it holds that mandamus will not interfere with discretion. However, shortly after the Court of Appeals for Cuyahoga County issued the *Goldsby* opinion, we decided *Vargo v. Travelers Ins. Co.* (1987), 34 Ohio St.3d 27, 516 N.E.2d 226, in which we held in paragraph two of the syllabus:

"R.C. 313.19 does not deprive a civil litigant of due process of law. The statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode and cause of decedent's death."

**{¶ 18}** R.C. 313.19 states that the coroner's findings as to the mode and manner of death are the "legally accepted manner and mode * * * *unless the court of common pleas of the county in which the death occurred*, after hearing, directs the coroner to change his decision or as to such cause and manner and mode of death." (Emphasis added.) In *Vargo*, we identified declaratory judgment as the proper way to challenge a coroner's findings pursuant to R.C. 313.19.

**{¶ 19}** Similarly, a little over a month after the court of appeals issued its decision in the instant case, we decided *Perez v. Cleveland* (1993), 66 Ohio St.3d 397, 613 N.E.2d 199, in which we again identified an action for declaratory judgment in the court of common pleas as the way to implement R.C. 313.19's hearing provisions in a case where plaintiff sought to have the coroner's verdict

changed from "homicide" to "natural causes."  Although declaratory judgment will not always constitute an adequate remedy that will preclude mandamus—*State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus—we hold it precludes it when the General Assembly has specified that the court of common pleas is the proper forum to challenge the coroner's decision.

{¶ 20} For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.

_____