DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Pickaway County Court of Common Pleas. For the reasons set forth in the opinion below, we reverse the judgment of the trial court and remand this matter so that judgment may be entered as directed by this court.
{¶ 2} Norman Dean Holley was found drowned in Walnut Creek which ran through the rear of his property. The coroner, Dr. Michael E. Geron, determined that Holley's death was a suicide and entered such finding on the death certificate. Appellants brought this action under R.C. 313.19
seeking to have the coroner change the determination from suicide to accidental. R.C. 313.19 provides:
{¶ 3} "The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death."
{¶ 4} The trial court conducted a hearing pursuant to this statute and issued a decision and entry finding "* * * that Mr. Holley committed suicide." From that decision, appellants take this appeal designating one assignment of error.
{¶ 5} ASSIGNMENT OF ERROR I: Was the Trial Court's refusal to direct the Coroner to change his decision as to the mode of death from suicide to accidental against the manifest weight of the evidence and/or was there insufficient evidence.
{¶ 6} We begin our discussion of the facts by noting that there is no direct evidence of suicide, such as a suicide note. There is no evidence from which one could only infer suicidal intent, such as jumping from a high building or putting a gun to one's mouth. There also is no evidence that Holley was subjected to those life stresses that often lead people to kill themselves, such as poor health, economic ruin, unrequited love, criminal prosecution, etc. Nor is there any evidence that Holley was depressed or, as is often the case, talked of taking his own life.
{¶ 7} The evidence in this case is entirely circumstantial. That is, the conclusion of suicide rests entirely on inferences drawn from essentially undisputed facts.
{¶ 8} There are two questions for this court to resolve. First, what standard is used by a coroner in reaching his decision as to the cause of death? Second, what standard is to be used by the trial court in reviewing the coroner's decision in a R.C. 313.19 hearing.
{¶ 9} There is in Ohio a presumption against suicide:
{¶ 10}"Where it is shown that death resulted from bodily injury caused by violent external means without a showing as to how the injury was in fact sustained, there is a presumption that death did not result from suicide, self-infliction of injury, criminal assault of another or voluntary employment as the means of causing death." Sheppard v. MidlandMutual Life Ins. Co. (1949), 152 Ohio St. 6, 15.
{¶ 11} In Evans v. Nat. Life Acc. Ins. Co. (1986), 22 Ohio St.3d 87, paragraph one of the syllabus, the Supreme Court of Ohio indicates that this presumption is rebuttable:
{¶ 12} "In the instance of a claim upon the life insurance policy where the cause of death is by some unknown external and violent means, there is a presumption against suicide. (Shepard v. Midland Mut. LifeIns. Co. (1949), 152 Ohio St. 6.) The presumption being no more than prima facie is rebuttable and disappears upon the production of substantial evidence to the contrary sufficient to counterbalance it (Carson v. Metropolitan Life Ins. Co. (1956), 165 Ohio St. 238.)"
{¶ 13} The presumption against suicide would appear to be applicable to the coroner in as much as his determination has been described as "quasi judicial." Several cases have challenged the constitutionality of the coroner's decision making authority as being void for vagueness and a denial of due process. For a discussion of the issue of void for vagueness see, Estate of Severt v. Wood (1995), 107 Ohio App.3d 123.
{¶ 14} The constitutional objections were found to be not valid inVargo v. Travelers Ins. Co. (1987), 34 Ohio St.3d 27, paragraphs one and two of the syllabus, which provides:
{¶ 15} "The coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary. (R.C. 313.19, construed.)
{¶ 16} "R.C. 313.19 does not deprive a civil litigant of due process of law. The statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode and cause of decedent's death."
{¶ 17} The opinion in Vargo, further states:
{¶ 18} "Accordingly, we hold that the coroner's factual determinations concerning the manner, mode and cause of the decedent's death, as expressed in the coroner's report and death certificate, create a non-binding, rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary.
{¶ 19} "Moreover, contrary to appellee's position that R.C. 313.19
permits the coroner to conduct an unconstitutional ex parte judicial determination, we believe that R.C. 313.19 merely recognizes the quasi-judicial character of the coroner's statutorily mandated duty to ascertain, in certain cases, a person's cause of death. As this court stated in State ex rel. Harrison v. Perry (1925), 113 Ohio St. 641,644-645, 150 N.E. 78, 79, the Coroner's duties `* * * become quasi-judicial in character when he is required to make a finding upon evidence as to whether or not a person whose body is found in the county came to his death by unlawful or suspicious means "and proceed to inquire how the deceased came to his death, whether by violence from any other person or persons, * * * and all circumstances relating thereto.'" See R.C. 313.15 and 313.17. Thus, as the coroner is, by statute, required to engage in quasi-judicial activity when inquiring into the cause of death, the fact that such activity is conducted without the joinder of all possible parties does not make R.C. 313.19 per se unconstitutional."Vargo at 30.
{¶ 20} Thus the answer to the first question in this case is that the standard to be used by a coroner in reaching his decision as to the cause of death is quasi-judicial. Quasi-judicial proceedings are strictly bound by the Rules of Evidence.
{¶ 21} The hearing conducted by the court pursuant to R.C. 313.19 is a judicial proceeding, and the procedures and results must be in accord with the Rules of Evidence.
{¶ 22} Many states have a presumption against suicide for the reasons best described in Knox v. Metro. Life Ins. Co., 19 Conn. Sup. 274, 277, "The basis of any such presumption must be the common knowledge, which may be noted without proof by a judge and jury, that sane persons do not ordinarily kill themselves." Travelers Ins. Co. v. Wilkes, supra, 704;Mallory v. Travelers Ins. Co., 47 N.Y. 52, 54; Grosvenor v. Fidelity Cas. Co., 102 Neb. 629, 631, 168 N.W. 596; Reynolds v. Maryland Cas.Co., 274 Mo. 83, 96; Order of United Commercial Travelers v. Watkins,38 Ohio App. 420, 429, 176 N.E. 469; Indianapolis v. Taylor (1999),707 N.E.2d 1047; Cutrell v. John Hancock Mut. Life Ins. Co. (1945),145 Neb. 550.
{¶ 23} Counsel in their briefs discuss the presumption against suicide, the burden of going forward, the burden of proof, but it appears to this court that under the ordinary rules there is no evidence of suicide in this case at all. Dr. Geron and his expert witness Dr. Kennedy expressed their opinion that Holley committed suicide, but those opinions appear to lack foundation.
{¶ 24} Evid.R. 702 permits experts to testify as to their opinion, and even their opinion as to the ultimate issue under Evid.R. 704. Evid.R. 703 and 705, however, require that the expert establish the basis from which they draw the inferences for their expert opinion.
{¶ 25} A trier of fact may draw reasonable inferences from established evidentiary facts just as an expert witness may have an opinion based on inferences drawn from facts as provided for in Evid.R. 703. But an expert witness cannot, as we instruct our juries, reach a conclusion where one inference is based on another inference. One may make separate inferences from the same fact. This often is a hard distinction to make, but the decision in Waldman v. Shipyard Marina, 102 R.I. 366, 1967, gives a good explanation of the application of the rule:
{¶ 26} "The long-standing rule in this state, namely, that an inference drawn from another inference is rejected as without probative force, may well be modified to the extent that an inference may rest upon a prior inference that has been established to the exclusion of all other reasonable inferences. But an inference resting on an inference drawn from established facts must be rejected where the facts from which it is drawn are susceptible of another reasonable inference."
{¶ 27} In McDougall v. Glenn Cartage Co. (1959), 169 Ohio St. 522, 525, inferences are discussed:
{¶ 28} "`An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence.' The phrase, `basing an inference upon an inference,' is frequently misunderstood and improperly applied. In the case of Gero v. John HancockMutual Life Ins. Co., 111 Vt., 462, 480, 18 A. (2d), 154, 163, it is said:
{¶ 29} "`The only inferences of fact which the law recognizes are immediate inferences from the facts proved. * * * But a given state of facts proven to the satisfaction of the jury may give rise to two or even more separate inferences, and in such a case one inference is not built upon the other, each is drawn independently from the same evidence. * * *'
{¶ 30} "See Hozian v. Crucible Steel Casting Co.,132 Ohio St. 453,9 N.E. (2d), 143, 112 A.L.R., 333, and Hurt v. Charles J. Rogers Transp.Co., 164 Ohio St. 329, 130 N.E. (2d), 820, in which latter case parallel inferences and their validity are discussed. It is of course basic that an inference can not be predicated upon a fact the existence of which rests on another inference. For example, if a seasick passenger on a ship in mid-ocean was last seen standing by the rail and he then disappeared completely, the inference may properly be drawn that he fell overboard and was drowned, but the additional inference that he intentionally jumped overboard and committed suicide can not be indulged. However, if it is shown that the passenger was in desperate financial and domestic trouble, was visibly depressed and had on several occasions threatened to do away with himself, then from such facts the inference can be drawn that he deliberately threw himself overboard and committed suicide. Again, if a pedestrian was observed walking along a road and he was found unconscious and injured at the side of the road immediately after the passing of an automobile, it may logically be inferred that such automobile struck him, but it can not be inferred further that the driver of the car was negligent."
{¶ 31} In this case, there are multiple inferences based on other inferences. The absence of a towel, for example, is an established fact. Holley's clothes were found neatly folded about 25 feet from the creek, but no towel was found. From the lack of a towel, it is inferred that Holley had a suicidal intent at the time he left his house. When he left his house, however, he locked it and set the alarm. If he had no suicidal intent, he may have forgotten to bring a towel. If he had no suicidal intent, he may have decided to go for a dip after he left his house. If he formulated his suicidal intent after leaving the house, the lack of a towel may not mean anything. It is also possible that since Holley disrobed twenty-five feet from the creek, he had a towel on when he went to the creek and it was lost when drowned.
{¶ 32} From the absence of a towel at the scene, it is inferred that the lack of such was deliberate on Holley's part. From that inference, it is inferred that Holley had suicidal intent.
{¶ 33} Similarly, there was evidence that Holley was afraid of the water. From that fact one might infer that he would not go wading in the creek. But there was also evidence that he was not so terrified of water that he waded into the ocean at Myrtle Beach. Dr. Brams suggested Holley might have had some sexual reason for entering the stream. There was also testimony from Dr. Kennedy that men Holley's age have a so-called midlife crisis. A man in a midlife crisis often engages in risky behavior like getting a motorcycle or a mistress. The fact that Holley was afraid of water leads to several reasonable inferences, only one of which is suicide.
{¶ 34} This court puts weight on the testimony by the expert witnesses that, as Dr. Kennedy testified, when there is a suicide, "There is always a reason." From the record in this case, one has to make one inference after inference each based on a previous inference. This is not competent evidence. This is not adequate proof of suicide.
{¶ 35} The accepted psychotherapist standard that all suicides have a reason is, in a way, like the law's presumption against suicide. For the psychiatrist and the psychologist the most reliable judgments about suicidal intent are made based on the reasons for it. For the courts the most reliable judgments about suicidal intent are based on some evidence showing that intent.
{¶ 36} There is no evidence in this case to show suicide except the coroner and his expert's vague impression that Mr. Holley's dull, routine life was not worth living. If Mr. Holley made such a judgment and ended his own life, there is no real proof of it. Without such proof, we cannot pass judgment on the quality of his life.
{¶ 37} In Chemical Bank of New York v. Neman (1990), 52 Ohio St.3d 204,207, the Court held:
{¶ 38} "This court is not required to determine the weight of evidence in civil matters, R.C. 2503.43, and ordinarily will not do so. State, exrel. Kobelt, v. Baker (1940), 137 Ohio St. 337, 18 O.O. 521,29 N.E. 2d 960. Accordingly, we will treat Neman's fifth proposition of law as an attack on the sufficiency of the evidence. Our standard of review is found in the syllabus of C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578: `Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'"
{¶ 39} Implicit in C.E. Morris, is that a judgment not supported by competent evidence will be reversed by a reviewing court as being against the manifest weight of the evidence. Applying this standard in light of the holdings in Sheppard, Evans, and Vargo, supra, we find that Assignment of Error I is well taken and is sustained.
{¶ 40} We reverse the decision of the trial court and remand this case with the direction that the trial court order the coroner to change the cause of death on the certificate pursuant to R.C. 314.19 to accidental in accord with this opinion.
Judgment Reversed and Cause Remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion and that Appellants recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. and Kline, J.: Concur in Judgment and Opinion.
Judge Lawrence Grey, retired For the Court, from the Fourth District Court of Appeals, sitting by assignment of the Supreme Court of Ohio in the Fourth District Court of Appeals.