[Cite as *McFarren v. Canton*, 2016-Ohio-484.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| WANDA L. McFARREN, Individually and as Administratrix for the ESTATE of ANGELINE B. RINKER, Deceased | JUDGES: Hon. John W. Wise, P. J. Hon. Patricia A. Delaney, J. Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | |
| -vs- | Case No. 2015 CA 00052 |
| EMERITUS AT CANTON, et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  2012 CV 02236


JUDGMENT:                    Affirmed in Part; Reversed in Part and
                             Remanded


DATE OF JUDGMENT ENTRY:      February 9, 2016


APPEARANCES:

For Plaintiff-Appellant              For Defendants-Appellees

LEE E. PLAKAS                        KEITH HANSBROUGH
MEGAN J. FRANTZ OLDHAM               KENNETH W. MCCAIN
COLLIN S. WISE                       MARSHALL, DENNEHEY, WARNER,
TZANGAS PLAKAS MANNOS LTD            COLEMAN & GOGGIN
220 Market Avenue South, Eighth Floor  127 Public Square, Suite 3510
Canton, Ohio  44702                  Cleveland, Ohio  44114-1291

*Wise, P. J.*

**{¶1}** Plaintiff-Appellant Wanda L. McFarren, individually and as Administratrix for the Estate of Angeline B. Rinker, deceased, appeals the March 3, 2015, judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** In July 2010, 91-year old Angeline B. Rinker and her family sought a temporary care provider for Mrs. Rinker. It was decided that Mrs. Rinker should stay at The Landing of Canton for a short-term period from July 8, 2010 to July 15, 2010.

**{¶3}** Defendant-Appellee The Landing of Canton is a licensed residential care facility which provides assisted living, memory care, and respite/short-term stay care. Defendant-Appellee Emeritus of Canton operates The Landing of Canton. Defendant-Appellee Wegman Family (Canton) LLC VI is the property owner of the building where The Landing of Canton is housed. For ease of discussion, The Landing of Canton and Emeritus of Canton will be referred to as "Emeritus."

**{¶4}** On July 8, 2010, Rinker and a family member signed a Respite/Short Term Stay Addendum to Resident Agreement with Emeritus. The Respite/Short Term Stay Addendum stated in Paragraph 4, "[p]rovided that we agree and have space available at the Community, you may extend this Respite Period by executing a new Respite Addendum or you may convert to a regular residency by executing a standard Resident Agreement." Defendant-Appellee Diane Willis signed the Respite/Short Term Stay Addendum as the Community Representative. Willis is the Business Officer Director with Emeritus. Willis has no medical training.

**{¶5}** Mrs. Rinker's original short-term stay agreement terminated on July 15, 2010. Mrs. Rinker's family determined they needed more time for Mrs. Rinker's care. On July 14, 2010, Plaintiff-Appellant Wanda L. McFarren signed a Resident Agreement with Emeritus to convert Mrs. Rinker's short-term stay to a regular residency. Mrs. Rinker's term of residency was month-to-month. Willis signed the Resident Agreement on behalf of Emeritus.

**{¶6}** The introduction of the Resident Agreement states the purpose of the Agreement "is to provide a statement of the services that will be furnished to you, and other legal obligations that we will assume. This Agreement also sets forth your legal obligations, both financial and non-financial." The introduction of the Agreement further states:

> Please note that as a residential care facility, we encourage our residents to exercise independence and to participate in physical activities to the extent of their capabilities. Because of this, there are risks inherent to living in our Community that are similar to the risks associated with independent living, since our Community does not provide one-on-one, 24 hour nursing care. This includes the risk that falls and other personal injuries may occur from time to time.

**{¶7}** The Resident Agreement outlines the level of Personal Care Services the resident will be provided, depending on the resident's needs. The Agreement states that prior to admission to the Community, the staff performed a comprehensive Resident Evaluation of the resident's needs. The Resident Evaluation is titled, "Emeritus Resident Baseline & Data Set." Based on the Emeritus Resident Baseline & Data Set, Emeritus

ranks the resident's needs by different levels of care. The Resident Evaluation of Mrs. Rinker was completed by Emeritus on July 9, 2010. Relevant to this appeal, the Emeritus Resident Baseline & Data Set describes Mrs. Rinker's level of care:

* * *

1c. Mental Behavioral Status

* * *

Resident has periods of confusion/forgetfulness. Landing of Canton will be responsible.

Resident requires safety check every shift. This applies, but not limited to a resident at risk for wandering. Landing of Canton will be responsible.

Requires daily safety checks (not related to fall history) Landing of Canton will be responsible.

2a. Mobility/Ambulation/Modes of Locomotion

Requires assistance for mobility to and from meals, activities, beauty shop, and/or common areas. Landing of Canton will be responsible.

* * *

2b. Gait/Balance

Resident has been identified to have an unsteady gait, monitor for safety, Ambulation and Mobility Evaluation completed. Landing of Canton will be responsible.

* * *

Requires safety checks every shift for fall prevention. Landing of Canton will be responsible.

2c. Transfer

Requires standby assistance with transfers. Landing of Canton will be responsible.

**Acknowledgement and Acceptance Agreement**

This document reflects the agreement of the parties regarding the needs of the Resident, regarding who will be responsible for providing the services to fill those needs, and regarding payment for services to be provided by Facility. The parties enter into this agreement for services to be provided to Resident by Facility or to be provided by Resident for himself or herself. *** Resident understands and acknowledges that independently providing for services can entail risks, including, without limitation, serious health risks. Resident agrees to release and hold Facility harmless against any claims, demands, damages, liability or obligation of whatsoever nature arising out of or relating in any way to injuries, damages or harm suffered by reason of Resident's decision to provide for the identified needs either by Resident or indirectly by arrangements with anyone other than Facility. THIS IS A RELEASE! READ AND UNDERSTAND BEFORE SIGNING.

* * *

The Emeritus Resident Baseline & Data Set stated Mrs. Rinker's level of care was 37.50 total points. The different levels of care are listed in Appendix B of the Resident Agreement. The Fee Summary, Appendix C of the Resident Agreement, stated that Mrs. Rinker was to receive Personal Care Services at Level 3 for a monthly fee of $1,240.00.

**{¶8}**  The Resident Agreement states the limits of its services:

**Transfer for more Appropriate Care**

The Community is licensed as a residential care facility, and is not designed to provide higher levels of care, such as 24 hour skilled nursing or care for mental or emotional disorders. You may remain in your Apartment as long as doing so is conducive to your safety and well-being, the safety and well-being of the other residents at the Community, and applicable legal requirements. If we determine, in consultation with you, your family and/or your physician, that you are unable to remain in your Apartment consistent with these requirements, you will be asked to move from the Community and this Agreement will terminate. If you do not move out under these circumstances, and we determine that it is necessary to provide you with one-on-one care in order to protect your health or safety or the health or safety of others, we will provide such care and you will be charged for it in accordance with Appendix B.

{¶9} On July 8, 2010, at the request of Emeritus, Mrs. Rinker's personal physician, Dr. Thomas, completed a health assessment of Mrs. Rinker. The health assessment form asked for Mrs. Rinker's health history and physical. As to "Ambulatory Status," Dr. Thomas wrote in "re-evaluate." Dr. Thomas checked the box for "Assist with transfer: One person." The health assessment form also asked for the "Type of Care or Services Resident Requires." Dr. Thomas wrote in "Nursing Home" for "Type." He also wrote, "Duration: Indefinite."

{¶10} On July 15, 2010 at approximately 6:40 p.m., a Resident Assistant found Mrs. Rinker lying beside her bed on the floor of her room. The Resident Assistant notified

the LPN, Shawn Meek. A portable x-ray company was called and it was determined at 11:45 p.m. that Mrs. Rinker fractured her left hip. Mrs. Rinker was transported to Mercy Medical Center.

{¶11} In support of McFarren's response to Emeritus's motion for summary judgment, McFarren provided the affidavit of Douglas Gerber. Douglas Gerber is the grandson of Mrs. Rinker. He stated in his affidavit:

> After my grandmother fell on July 15, 2010 while at Emeritus at Canton, she
>
> told me that she had been calling out for someone to assist her move from
>
> her wheelchair to her bed. When no one came, she attempted to transfer
>
> herself from her wheelchair to the bed at which point she fell.

{¶12} Mrs. Rinker stayed at Mercy Medical Center until July 21, 2010. She was then transferred to the Canton Regency. That evening, Mrs. Rinker passed away.

{¶13} The death certificate certified by the Stark County Coroner stated the immediate cause of death was complications of a left hip fracture. The coroner listed the condition leading to the immediate cause of death as, "Fall."

{¶14} On July 13, 2012, Plaintiff-Appellant Wanda L. McFarren, Individually and as Administratrix for the Estate of Angeline B. Rinker, Deceased, filed a complaint in the Stark County Court of Common Pleas. In the complaint, she named Emeritus of Canton, Emeritus Corporation, The Landing of Canton, Wegman Family Canton LLC VI, and Diane Willis as defendants. McFarren filed an amended complaint on March 10, 2014 asserting six causes of action.

{¶15} In Count One, McFarren set forth a claim for negligence. McFarren alleges the defendants were negligent in admitting and retaining Mrs. Rinker as a resident based

upon the argument that Mrs. Rinker required a higher level of care than the defendants could provide.

{¶16} In Count Two, McFarren claimed the defendants violated the Ohio Patients' Bill of Rights under R.C. 3721.13(A)(30).

{¶17} In Counts Three and Four, McFarren argued the defendants breached the terms of the Resident Agreement.

{¶18} In Count Five, McFarren claimed the defendants caused the wrongful death of Mrs. Rinker by their failure to meet the standard of care in failing to properly supervise, attend, and assist Mrs. Rinker and failing to implement fall risk interventions.

{¶19} In Count Six, McFarren set forth a claim for punitive damages.

{¶20} On October 27, 2014, Appellees Emeritus and Diane Willis filed motions for summary judgment. On the same date, McFarren filed a motion for summary judgment as to cause of death.

{¶21} In conjunction with its motions for summary judgment, Emeritus filed a Motion to Strike the Affidavit of Douglas Gerber.

{¶22} On March 3, 2015, the trial court ruled on the pending motions for summary judgment and the motion to strike.

{¶23} The trial court first granted Emeritus's motion to strike the affidavit of Douglas Gerber. The trial court determined the testimony of Gerber was hearsay and did not fall under any exception to the hearsay rule.

{¶24} The trial court next granted the motions for summary judgment of Emeritus and Willis. The trial court determined the claims raised by McFarren were medical claims, and therefore time-barred by the one-year statute of limitations under R.C. 2305.113. As

to McFarren's wrongful death claim, the trial court found that McFarren failed to establish there were genuine issues of material fact through expert testimony that Emeritus deviated from the standard of care and that deviation proximately caused Mrs. Rinker's fall on July 15, 2010. Finally, the trial court also denied McFarren's claim for punitive damages.

{¶25} It is from this decision McFarren now appeals, raising the following errors for review:

### ASSIGNMENTS OF ERROR

{¶26} "I. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO CAUSATION WHEN THE PLAINTIFF HAS INTRODUCED EVIDENCE FROM WHICH REASONABLE PERSONS MAY CONCLUDE THAT IT IS MORE PROBABLE THAN NOT THAT THE EVENT WAS CAUSED BY THE DEFENDANT'S BREACH OF THE STANDARD OF CARE.

{¶27} "II. A PLAINTIFF'S CLAIMS OF NEGLIGENCE, VIOLATION OF OHIO'S PATIENTS' BILL OF RIGHTS, AND BREACH OF CONTRACT FOR PERSONAL INJURY ARE NOT A 'MEDICAL CLAIM' WHEN THE NEGLIGENCE ACTORS DID NOT PROVIDE ANY AMOUNT OF PROFESSIONAL SKILL TO THE PLAINTIFF.

{¶28} "III. THE TRIAL COURT ERRED HOLDING SUMMARY JUDGMENT ON PUNITIVE DAMAGES WAS PROPER WHEN THE EVIDENCE IS THAT EMERITUS HAD ACTUAL KNOWLEDGE THAT MRS. RINKER REQUIRED A HIGHER LEVEL OF CARE THAN IT PROVIDED, AND DESPITE SUCH KNOWLEDGE, ADMITTED, RETAINED, AND READMITTED HER AS A RESIDENT.

**{¶29}** "IV. MR. GERBER'S STATEMENT THAT HIS GRANDMOTHER FELL WHILE TRANSFERRING HERSELF AFTER CALLING FOR HELP AND NO ONE CAME SHOULD NOT HAVE BEEN STRICKEN BECAUSE SUCH TESTIMONY DIRECTLY REBUTS EMERITUS EXPERT'S TESTIMONY; FURTHER IT TENDS TO REBUT OTHER STATEMENTS BY EMERITUS'S EMPLOYEES.

**{¶30}** "V. MCFARREN'S MOTION FOR SUMMARY JUDGMENT ON CAUSATION SHOULD HAVE BEEN GRANTED AS THERE IS NO GENUINE DISPUTE THAT MRS. RINKER'S FALL CAUSED HER DEATH."

<u>**Summary Judgment Standard of Review**</u>

**{¶31}** The trial court resolved the claims raised in McFarren's complaint by summary judgment. Four of Appellant's five Assignments of Error on appeal argue the trial court erred in granting summary judgment in favor of Emeritus. (McFarren's fourth Assignment of Error argues the trial court abused its discretion when it granted Emeritus's motion to strike the affidavit of Douglas Gerber.) We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.\*\*\* A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is

adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶32}** The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

**{¶33}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**{¶34}** For ease of discussion, we will address Appellant's assignments of error out of order.

## II.

**{¶35}** In its motion for summary judgment, Emeritus moved the trial court to dismiss McFarren's claims for negligence, violation of Ohio's Patient's Bill of Rights, and breach of contract arguing that such claims were medical negligence claims and therefore barred by the one-year statute of limitations. The trial court found McFarren's claims were based upon medical care and treatment provided to Mrs. Rinker. Based on the date of

the incident and the date the complaint was filed, the trial court found McFarren's claims were outside the statute of limitations.

{¶36} McFarren argues in her second Assignment of Error that her claims for negligence, violation of the Ohio Patient's Bill of Rights, and breach of contract are not "medical claims" pursuant to R.C. 2305.113. She states her claims are based on the argument that Mrs. Rinker was retained and readmitted at Emeritus against the direction of her personal physician and Mrs. Rinker's fall was caused by the lack of assistance to be provided by nonmedical providers. She states these claims are based on common law negligence, rather than arising "out of the medical diagnosis, care, or treatment of" of Mrs. Rinker.

**Medical Claims**

{¶37} According to Emeritus, McFarren's claims indicate that R.C. §2305.113(A), with its one-year statute of limitations, applies to this case. R.C. §2305.113(A) states: "Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." In this case, Mrs. Rinker fell on July 15, 2010 and died on July 20, 2010. The original complaint was filed on July 13, 2012.

{¶38} "Medical claim" is defined in R.C. §2305.113(E)(3):

"Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical

technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

(b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:

(i) The claim results from the acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

Emeritus designates itself as a licensed residential care facility.

{¶39} The issue in this case is whether the claims involve "medical care" as defined under R.C. §2305.113(E)(3). There are two leading cases interpreting the phrase "medical care" in reference to R.C. §2305.113. In *Browning v. Burt*, 66 Ohio St.3d 544, 613 N.E.2d 993 (1993), the Ohio Supreme Court held that "care," as used in the prior version of R.C. §2305.113(E)(3), referred to the "prevention or alleviation of a physical or mental defect or illness." *Id.* at 557. *Browning* held the term "care" should not be interpreted any more broadly than the context of R.C. §2305.113 allows. *Id.* The complaint in *Browning* was for negligent credentialing of physicians, and the court held that this type of claim does not directly involve medical care and is not subject to the one-year statute of limitations. *Haskins v. 7112 Columbia, Inc.*, 2014-Ohio-4154, 20 N.E.3d 287, ¶ 12 (7th Dist.) citing *Browning* at 557.

{¶40} The other leading Supreme Court case on the issue is *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14, 635 N.E.2d 1239 (1994). The Court considered two cases in which the injuries arose from the use of an x-ray table in the first case and a wheelchair in the second. In the first case, the plaintiff was injured when she was incorrectly secured to an x-ray table by a hospital intern. The plaintiff fell off the table. The Court found the x-ray was ordered to determine and alleviate a medical condition. The court noted there was a certain amount of professional expertise that was needed to prepare a patient for x-rays. *Haskins*, 2014-Ohio-4154, ¶13 citing *Rome* at 16. In the second case, plaintiff sustained an injury when his wheelchair collapsed as he was being taken to physical therapy ordered by a doctor. In holding that the complaint alleged a medical claim, the court stated "the transport of [the patient] from physical therapy was ancillary to and an inherently necessary part of his physical therapy treatment." *Haskins*, 2014-Ohio-4154, ¶ 14 citing *Rome* at 16.

{¶41} Subsequent to the opinion of the Supreme Court of Ohio in *Rome*, several courts of appeals have considered the question whether a complaint alleges a "medical claim." In *Balascoe v. St. Elizabeth Hosp. Med. Ctr.*, 110 Ohio App.3d 83, 85, 673 N.E.2d 651 (7th Dist.1996), a patient fell after stepping on a piece of plastic on her way from the hospital bed to the bathroom. The Seventh District Court of Appeals determined when the patient fell on the way to the bathroom, the fall did not arise directly from medical diagnosis, care or treatment, even though the patient had called for a nurse to assist her in walking to the bathroom. *Id.* at 86.

{¶42} In *Conkin v. CHS–Ohio Valley, Inc.*, 1st Dist. No. C–110660, 2012-Ohio-2816, a nursing home resident sustained injuries while being moved from a wheelchair to

a device known as a Hoyer lift. The trial court dismissed the action because plaintiff did not file the complaint within the one-year statute of limitations pertaining to medical claims. The First District Court of Appeals determined the complaint did not allege a "medical claim" because there was no indication that the use of the lift was an inherent part of a medical procedure, that the use of the lift arose out of physician-ordered treatment, or that professional expertise or professional skill was required to transfer a patient to the lift.

**{¶43}** In *Hill v. Wadsworth–Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421, 925 N.E.2d 1012 (9th Dist.), a patient filed an action against a hospital and a nurse after she sustained injuries while being helped out of a wheelchair during her discharge from a hospital. The trial court determined that the complaint alleged a "medical claim" and granted summary judgment in favor of the nurse. The Ninth District Court of Appeals held the complaint did not allege a "medical claim" because the conduct of hospital staff in escorting a patient in a wheelchair was not inherently necessary for any medical test or treatment.[1]

---

[1] *See also Haskins v. 7112 Columbia Inc.*, 2014-Ohio-4154, 20 N.E.3d 287, (7th Dist.) (Action against nursing home and its employees for breaking patient's leg while moving her in the course of changing her bed linens was not a "medical claim" where there is no indication that changing patient's bed linens "was part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill."); *McDill v. Sunbridge Care Ents., Inc.*, 4th Dist. Pickaway No. 04–11–2013, 2013-Ohio-1618, (Plaintiff was allegedly injured when two employees of a rehabilitation facility failed to keep her from falling backwards as she stood to wash her hands. The court of appeals held that plaintiff's injury did not arise out of medical diagnosis, care, or treatment, and was not a "medical claim," even though plaintiff's physician had ordered her not to leave her bed unassisted); *Carte v. The Manor at Whitehall*, 10th Dist. No. 14AP-568, 2014-Ohio-5670 (Plaintiff fell using the bathroom while attended by only one staff person. The court of appeals held the action against the nursing home was not a "medical claim" as the injury arose because the patient had to

{¶44} Not all care that occurs in a hospital or nursing home involves "medical care" within the meaning of R.C. §2305.113. *Carte v. The Manor at Whitehall*, 10th Dist. No. 14AP-568, 2014-Ohio-5670, ¶ 29. Based on *Browning* and *Rome*, in order to determine whether a caim is a "medical claim" pursuant to R.C. 2305.113, the court must examine whether the action or inaction was part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill.

**Negligence Claims**

{¶45} The trial court in this case relied on our decision in *Pocci v. Aultman Hospital*, 5th Dist. Stark No. 2008-CA-00101, 2008-Ohio-5961 to find that McFarren's claims were "medical claims." In *Pocci*, the plaintiff was admitted to Aultman Woodlawn for rehabilitation following surgery. The plaintiff suffered a fall after a nurse's aide allegedly left him unattended in the shower. Plaintiff filed an action against Aultman Hospital. The plaintiff also alleged numerous violations of R.C. §3721.13, including failure to give plaintiff adequate personal attention to address his needs, failure to respond to his calls, and failure to properly dispense his medication. *Id.* at ¶4. The hospital filed a motion for summary judgment, arguing the plaintiff's claims were medical claims and were filed beyond the one-year statute of limitations. The trial court granted summary judgment in favor of defendant and plaintiff appealed. On appeal, plaintiff argued the issue of whether his claim was a medical claim tuned on the professional designation of the employee responsible for his injury. We disagreed, finding that the facility in which the alleged injuries occurred was an entity covered under R.C. §2305.113. *Id.* at ¶ 21.

---

use the bathroom, not because he was in the process of receiving medical diagnosis, care, or treatment.)

{¶46} In *Pocci*, it does not appear that the plaintiff or the defendant raised the issue of whether the action that caused the injury was part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill to determine whether the claim was a medical claim. The plaintiff merely argued to the court that the employee whom caused the alleged injury was not covered by R.C. §2305.113, therefore it was not a medical claim. *Pocci* answered the question that the defendant facility was covered by R.C. §2305.113.

{¶47} In this case, McFarren claims that Mrs. Rinker fell and broke her hip because Emeritus and its staff deviated from the standard of care. Based on the line of cases examining injuries within residential facilities, nursing homes, and hospitals, the issue to analyze is whether the injury occurred as part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill. We review the facts in a light most favorable to the non-moving party. The Emeritus staff found Mrs. Rinker laying prostrate on the floor of her room. There is no Civ.R. 56 evidence that she was receiving medical care at the time of her fall. Simply because Mrs. Rinker was a resident of Emeritus at the time of the fall does not render her claim for negligence a medical claim. In this case, McFarren's claim for negligence states a claim for common law negligence, not a medical claim. McFarren's claim for negligence was filed within the statute of limitations.

**Breach of Contract Claims**

{¶48} McFarren claimed in her complaint that Emeritus breached the terms of the Resident Agreement when it retained Mrs. Rinker and when it failed to prevent Mrs.

Rinker from falling. The trial court found that the breach of contract claims were also medical claims and therefore outside the statute of limitations.

{¶49} In *Conkin v. CHS-Ohio Valley, Inc.,* 1st Dist. Hamilton No. C110660, 2012-Ohio-2816, the court of appeals examined a case where a nursing home resident was injured while being transferred into a Hoyer lift so the resident could shower. The guardian of the nursing home resident brought claims for negligence, negligent training, violation of resident's rights under R.C. §3721.13, respondeat superior and breach of contract. The First District Court of Appeals found the guardian's claims as pled were not medical claims. *Id.* at ¶11.

{¶50} Upon our de novo review and the prevailing case law with these similar facts, we find the breach of contract claims based on Mrs. Rinker's fall are not medical claims.

{¶51} The trial court did not address McFarren's breach of contract claims because it found them to be outside the statute of limitations. We reverse the trial court's judgment as to the breach of contract claims and remand these claims to the trial court for further proceedings based on this opinion and law.

**Patient's Bill of Rights**

{¶52} McFarren also argues Emeritus violated the Patient's Bill of Rights when it allowed Mrs. Rinker to stay at Emeritus rather than transferring her to a facility that provided a higher level of care. R.C. §3721.13 delineates a lengthy list of residents' rights and the right of a resident's sponsor or representative to act on behalf of the resident to ensure the resident's rights. R.C. §3721.13(A) sets forth various rights afforded residents

of a nursing home. In her complaint, McFarren alleges a violation of R.C. §3721.13(A)(30), which states:

(A) The rights of residents of a home shall include, but are not limited to, the following:

* * *

(30) The right not to be transferred or discharged from the home unless the transfer is necessary because of one of the following:

(a) The welfare and needs of the resident cannot be met in the home.

(b) The resident's health has improved sufficiently so that the resident no longer needs the services provided by the home.

(c) The safety of individuals in the home is endangered.

(d) The health of individuals in the home would otherwise be endangered.

(e) The resident has failed, after reasonable and appropriate notice, to pay or to have the medicare or medicaid program pay on the resident's behalf, for the care provided by the home. A resident shall not be considered to have failed to have the resident's care paid for if the resident has applied for medicaid, unless both of the following are the case:

* * *

(f) The home's license has been revoked, the home is being closed * * * or the home otherwise ceases to operate.

(g) The resident is a recipient of medicaid, and the home's participation in the medicaid program is involuntarily terminated or denied.

(h) The resident is a beneficiary under the medicare program, and the home's participation in the medicare program is involuntarily terminated or denied.

**{¶53}** Upon our de novo review of the motion for summary judgment, we find R.C. §3721.13(A)(30) to be inapplicable to the facts of the present case. The unambiguous language of R.C. §3721.13(A)(30) states that a resident of a home shall have the right *not* to be transferred or discharged from the home unless the transfer is necessary. The terms of R.C. §3721.13(A)(30) and the related hearing requirements found in R.C. §3721.16 that must be followed prior to a transfer or discharge demonstrate the purpose of R.C. §3721.13(A)(30) is to protect a resident of a home from arbitrary discharge or transfer, not to encourage it.

**{¶54}** McFarren's second Assignment of Error is sustained in part and overruled in part.

### I., IV.

**{¶55}** McFarren argues in her first Assignment of Error that the trial court erred when it found there was no genuine issue of material fact that Mrs. Rinker's fall was caused by Emeritus's breach of the standard of care.

**{¶56}** McFarren argues in her fourth Assignment of Error that the trial court abused its discretion when it excluded the Gerber affidavit.

**Negligence Claims**

**{¶57}** McFarren brings a negligence claim and a wrongful death action on a theory of negligence. In a negligence action, it is fundamental that the plaintiff in such a case must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately

resulting therefrom. *Scharver v. Am. Plastics Products, LLC*, 5th Dist. Stark No. 2009 CA 00087, 2010-Ohio-230, ¶ 12 citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). To prevail on a wrongful death claim based upon a theory of negligence, a plaintiff must show "(1) the existence of a duty owing to plaintiff's decedent, i.e., the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122, 214 N.E.2d 213 (1966), paragraph one of the syllabus.

### Proximate Cause of Mrs. Rinker's Fall

{¶58} The parties in this case do not dispute there was an existence of a duty. The issues to be resolved are whether Emeritus breached its duty and if there is proximate causation between the breach of duty and the death. McFarren argues Emeritus committed numerous breaches of the standard of care and the breaches of the standard of care proximately caused Mrs. Rinker's fall. In support of her argument, McFarren provided the expert opinion of Jill Cox, RN LNC.

### Admission or Retention of Mrs. Rinker

{¶59} McFarren argues that Emeritus breached the standard of care when it admitted and retained Mrs. Rinker against the direction of Mrs. Rinker's personal physician, Dr. Thomas. On July 8, 2010, Mrs. Rinker's personal physician, Dr. Thomas, completed a health assessment of Mrs. Rinker. The health assessment was done at the request of Emeritus.

{¶60} The health assessment form asked for Mrs. Rinker's health history and physical. As to "Ambulatory Status," Dr. Thomas wrote in "re-evaluate." Dr. Thomas checked the box for "Assist with transfer: One person." The health assessment form also

asked for the "Type of Care or Services Resident Requires." Dr. Thomas wrote in "Nursing Home" for "Type." He also wrote, "Duration: Indefinite."

{¶61} McFarren argues Dr. Thomas stated that Mrs. Rinker should be placed in a nursing home for the type of care or services the resident required. Emeritus knew this, but admitted and retained Mrs. Rinker. The evidence in this case is that it was the decision of Mrs. Rinker and her family to reside at Emeritus. There is no Civ.R. 56 evidence that Mrs. Rinker or her family consulted with Dr. Thomas before her admission or after her admission. Further, McFarren did not provide the deposition or affidavit of Dr. Thomas to discern what he meant by "nursing home." The term "nursing home" has a statutory definition, but it can be generally used to describe different levels of care. Emeritus is a residential facility that provides assisted living. An assisted living facility is not the same as a skilled nursing facility. A memory care unit is not the same as an assisted living facility or a skilled nursing facility. McFarren heavily relies upon the "nursing home" statement by Dr. Thomas on the health assessment form, but without a deposition or affidavit from Dr. Thomas as to his statement as to the level of care he felt Mrs. Rinker needed, the expert's interpretation of Dr. Thomas's statement is pure speculation.

{¶62} Reasonable minds could conclude there was no breach of the standard of care to admit and retain Mrs. Rinker at Emeritus based on the health assessment by Dr. Thomas.

**Fall Prevention**

{¶63} McFarren's expert states that Emeritus fell below the standard of care because it did not have fall interventions in place to prevent Mrs. Rinker from falling.

**(Affidavit of Douglas Gerber)**

**{¶64}** In their motion for summary judgment, Appellees argued, and the trial court found, there was no evidence in the case as to how or why Mrs. Rinker fell.

**{¶65}** In support of her response to the motion for summary judgment, McFarren provided the affidavit of Douglas Gerber, the grandson of Mrs. Rinker. He stated in his affidavit:

> After my grandmother fell on July 15, 2010 while at Emeritus at Canton, she told me that she had been calling out for someone to assist her move from her wheelchair to her bed. When no one came, she attempted to transfer herself from her wheelchair to the bed at which point she fell.

**{¶66}** Emeritus moved to strike the Gerber affidavit as hearsay. It argued there was no exception to the hearsay rule to allow the admission of the statement. The trial court agreed.

**{¶67}** The admission or exclusion of evidence rests with the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). To find an abuse of that discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983)..

**{¶68}** "Hearsay" is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The evidence rules specifically exclude hearsay testimony from admission into evidence by Evid.R. 802, which provides as follows:

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute

enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

**{¶69}** Plaintiffs contend that this evidence is admissible as an exception to the hearsay rule as set forth in Evid.R. 804(B)(5), which provides as follows:

(B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 * * *

(5) Statement by a deceased or incompetent person. The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

**{¶70}** The trial court found McFarren could not meet the third requirement because there was no testimony by an adverse party that Mrs. Rinker called out for help to assist her before she fell or adverse testimony as to how Mrs. Rinker fell.

**{¶71}** The Supreme Court of Ohio discussed Evid.R. 804(B)(5) at length in *Johnson v. Porter* (1984), 14 Ohio St.3d 58, 14 OBR 451, 471 N.E.2d 484. That court recognized that Evid.R. 601 abrogated R.C. 2317.03, the "dead man's" statute, which

disqualified the testimony of an adverse party in a suit involving the executor of a decedent's estate. Thus, an adverse party may not testify **973 against a decedent who is a party to the action through representation. Evid.R. 804(B)(5) makes an exception to the hearsay rule for statements made by a decedent when the statements meet the requirements set forth in the rule. *See, also, Testa v. Roberts* (1988), 44 Ohio App.3d 161, 542 N.E.2d 654.

{¶72} "* * * Evid.R. 804(B)(5) compensates the parties substituted for the decedent by making a hearsay exception for declarations by the decedent which rebut testimony by an adverse party on a matter within the knowledge of the decedent. This allows the decedent to 'speak from the grave.' " *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 337, 441 N.E.2d 845, 851

{¶73} Appellants argue that the affidavit should be allowed in to rebut the deposition testimony of Nurse Shawn Meeks, an employee of Emeritus on duty the evening Mrs. Rinker fell. Nurse Meeks was asked:

Q: Do you know how the fall happened?

A: No, I'm not. I don't know.

Q: Are you aware as to where Mrs. Rinker was trying to go?

Objection.

A. I don't even remember. I don't even remember if she could tell me. (Meeks Depo. at 79).

{¶74} Nurse Meeks was also asked if Mrs. Rinker had a walker or wheelchair anywhere in the vicinity or within range of her reach at the time she fell. Nurse Meeks answered: "I don't recall. I don't recall if there was anything." (Meeks Depo. at 76).

{¶75} With regard to Mrs. Rinker calling out prior to her fall, Nurse Meeks was asked:

Q: "Had she screamed at all, to your knowledge, prior to her being discovered at 6:40 p.m.?"

A: "No." (Meeks Depo., 80).

{¶76} Britney Gordon and Ruby Wright, Resident Assistants on staff the night Mrs. Rinker fell, also testified that they had no recollection of the events surrounding Mrs. Rinker's fall. (Gordon Depo at 55; Wright Depo. at 42).

{¶77} Initially, we do not find Mrs. Rinker's statement that she was calling out for assistance and her explanation as to how she fell, as contained in the Gerber Affidavit, rebuts the statements of Nurse Meeks, Gordon and Wright, who all state that they have no recollection of the events surrounding Mrs. Rinker's fall. We do not find Mrs. Rinkers' statements that she called out and no one came rebuts the statements by the staff that they do not know, recall or remember if Mrs. Rinker called out or screamed prior to being discovered on the floor. They are not affirmatively stating that Mrs. Rinker did not call out, only that they do not know if she did.

{¶78} However, more importantly, Evid.R. 804(B)(5) only permits hearsay offered to rebut testimony by an adverse party." In the case *sub judice*, when Appellant submitted the affidavit of Douglas Gerber, there had been no testimony by an adverse party put forth. We find that Appellant was actually submitting the affidavit as part of its case in chief to prove the element of proximate cause, not in rebuttal to a claim made by an adverse party.

{¶79} Usually Evid.R. 804(B)(5) statements are not used during a plaintiff's case in chief. The statements can be offered to rebut adverse parties' testimony when the adverse parties are testifying as if on cross-examination in the case in chief. *See* B*obko v. Sagen* (1989), 61 Ohio App.3d 397, 409–410, 572 N.E.2d 823, 830–832. Evid.R. 804(B)(5) exists to benefit a representative of a decedent to allow the decedent to "speak from the grave" to rebut testimony of an adverse party. *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 336–338, 441 N.E.2d 845, 850–851.

{¶80} Evid.R. 804(B)(5), therefore, does not apply.

{¶81} We therefore overrule McFarren's fourth Assignment of Error.

**No Genuine Issue of Fact as to Mrs. Rinker's Fall**

{¶82} Even assuming that the statements contained in the Gerber Affidavit were admissible. Such finding does not dispel the question of how Mrs. Rinker fell in her room. There is no evidence in the record to establish a genuine issue of material fact as to how Mrs. Rinker fell. The Civ.R. 56 evidence shows that no one on staff at Emeritus recalls Mrs. Rinker in her room before the fall. There is no evidence whether Mrs. Rinker was in her bed or in her wheelchair before she was discovered on the floor of her room at 6:40 p.m. There is no Civ.R. 56 evidence whether Mrs. Rinker wore an emergency pendant to alert someone if she fell or even if she was wearing the pendant, or that Mrs. Rinker knew to use the device. McFarren's expert opines different fall preventions that Emeritus should have had in place to prevent Mrs. Rinker's fall, but in this case, there is no knowledge as to how Mrs. Rinker fell. As the trial court determined, it is speculation on part of McFarren's expert to state that if Emeritus had more precautions been in place, Mrs. Rinker would not have fallen.

{¶83} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293, 662 N.E.2d 264; Civ.R. 56(C).

{¶84} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶85} Here, even assuming that Mrs. Rinker did call for assistance prior to her fall, there is no evidence in the record, hearsay or otherwise, to establish how long or how many times Mrs. Rinker called out to determine if any alleged delay in responding constituted proximate cause for purposes of establishing negligence. Without evidence as to how long she called out prior to deciding to attempt the transfer on her own, there is not sufficient evidence to meet the proximate cause standard.

{¶86} In this case, McFarren has failed to meet her burden to respond, with affidavits or other Civ.R. 56 evidence, setting forth specific facts to show there are genuine issue of material facts for trial.

{¶87} There is much speculation as to how Mrs. Rinker fell, but McFarren has not provided Civ.R. 56 evidence to create a genuine issue of material fact that it was Emeritus's deviation from the standard of care that proximately caused Mrs. Rinker's fall.

{¶88} McFarren's first Assignment of Error is overruled.

**III.**

{¶89} McFarren argues in her third Assignment of Error that the trial court erred when it found that reasonable minds could only conclude that McFarren was not entitled to punitive damages. We disagree.

{¶90} Here, the trial court determined that even if it found McFarrren's claims for negligence and wrongful death were viable, McFarren would not be entitled to punitive damages. "The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct." *Burns v. Adams,* 4th Dist. Scioto No. 12CA3508, 2014-Ohio-1917, ¶79. "Punitive damages may be awarded as a punishment to discourage others from committing similar wrongful acts if a plaintiff proves by clear and convincing evidence that a defendant acted with malice." *Colegrove v. Fred A. Nemann Co.,* 1st Dist. Hamilton No. C–140171, 2015-Ohio-533, ¶ 28.

{¶91} Malice is "that state of mind under which a person's conduct is characterized by hatred, ill will, or spirit of revenge, or a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm." *Preston v. Murty,* 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1987). The trial court found no Civ.R. 56 evidence rising to the level of malice.

{¶92} While we found that the negligence and breach of contract claims were not barred by the statute of limitations, we determined the negligence and wrongful death

claims failed for lack of causation. All that remains for the trial court's disposition are McFarren's breach of contract claims. The Ohio Supreme Court has held that "[b]ecause the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, '[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.' 3 Restatement of the Law 2d, Contracts (1981) 154, Section 355." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381, 613 N.E.2d 183 (1993).

**{¶93}** McFarren's third Assignment of Error is overruled.

**V.**

**{¶94}** On October 27, 2014, McFarren filed a motion for summary judgment on the issue of cause of Mrs. Rinker's death. McFarren presented Mrs. Rinker's death certificate certified by the Stark County Coroner that stated the immediate cause of death was complications of a left hip fracture. The coroner listed the condition leading to the immediate cause of death as, "Fall."[2]

**{¶95}** In the trial court's March 3, 2015, judgment entry granting summary judgment in favor of Emeritus, the trial court found the motion for summary judgment as to causation (cause of death) to be moot.

**{¶96}** R.C. §313.19 sets forth the presumptive value of a coroner's determination as evidence in civil and criminal cases in which the cause, manner, and mode of death are at issue. *Mohn v. Ashland Cty. Chief Med. Examiner*, 2015-Ohio-1985, 34 N.E.3d

---

[2] Emeritus argues in its appellate brief that the death certificate attached to the record shows that it is "void," but the "void" wording on the death certificate is simply a watermark that appears on a photocopy of the document to prevent forgery.

137, 147, ¶¶ 39-40 (5th Dist.) citing *TASER Int'l Inc. v. Chief Medical Examiner of Summit Co.*, 9th Dist. Summit No. 24233, 2009-Ohio-1519.

{¶97} According to R.C. §313.19:

The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

{¶98} As stated by the Ohio Supreme Court, "the coroner's factual determination concerning the manner, mode, and cause of decedent's death, as expressed in the coroner's report and death certificate, create a nonbinding, rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary." *Vargo v. Travelers Ins. Co.*, 34 Ohio St.3d 27, 516 N.E.2d 226 (1987). This presumption exists because the coroner is a medical expert rendering an expert opinion on a medical question. *Id.* This evidentiary presumption affords "much weight" to the coroner's factual determinations. *Id.* However, the statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode, and cause of decedent's death. *Id.*

{¶99} As to the substance of the parties' arguments, the trial court has not reached these issues because it found the matter was moot. Based on our decision to remand the

breach of contract claims to the trial court for further consideration, we remand the matter of cause of death for the trial court's decision.

{¶100} We sustain McFarren's fifth Assignment of Error, not to reverse the trial court's decision, but to remand the decision to the trial court for resolution.

## CONCLUSION

{¶101} Accordingly, we find the following:

A. We reverse the trial court's judgment as to its decision that McFarren's breach of contract claims were time-barred by the statute of limitations. We remand the breach of contract claims to the trial court for further proceedings consistent with this opinion and law.

B. We affirm the trial court's decision that Emeritus is entitled to judgment as a matter of law on McFarren's claims for negligence and wrongful death as both claims involve the same analysis.

C. We affirm the trial court's decision that Emeritus is entitled to judgment as a matter of law on McFarren's claim for punitive damages.

D. We remand the issue of the cause of Mrs. Rinker's death to the trial court for further proceedings consistent with this opinion and law.

By: Wise, P. J.
Baldwin, J., concurs.
Delaney, J., concurs in part and dissents in part.

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN

JWW/d 0125

*Delaney, J., concurs in part and dissents in part,*

{¶102} I concur in the majority's analysis and conclusion that McFarren's claims are not medical negligence claims, subject to a one-year statute of limitations, and that R.C. 3721.13(A)(30) is inapplicable to the facts of the present case. Thus, I agree in the majority's disposition of the second Assignment. Further, I concur in the majority's disposition of the fifth Assignment of Error but for the reason that there is no evidence to support a claim for punitive damages.

{¶103} However, I respectfully dissent as to the majority's conclusion to sustain the first, third and fourth Assignments of Error relating to causation.

{¶104} The trial court found there was no evidence in the case as to how or why Mrs. Rinker fell. In opposition to the motion for summary judgment, McFarren provided the affidavit of Douglas Gerber, the grandson of Mrs. Rinker. He stated in his affidavit:

> After my grandmother fell on July 15, 2010 while at Emeritus at Canton, she told me that she had been calling out for someone to assist her move from her wheelchair to her bed. When no one came, she attempted to transfer herself from her wheelchair to the bed at which point she fell.

{¶105} Emeritus moved to strike the Gerber affidavit as hearsay. It argued there was no exception to the hearsay rule to allow the admission of the statement. The trial court agreed. McFarren argues in her fourth Assignment of Error that the trial court abused its discretion when it excluded the Gerber affidavit.

{¶106} The admission or exclusion of evidence rests with the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). To find an abuse of that discretion, we must find that the trial court's decision was unreasonable, arbitrary

or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Hearsay is not admissible unless otherwise provided by law. Evid.R. 802. McFarren argues that the Gerber affidavit is admissible under the exception to hearsay set forth in Evid.R. 804(B)(5). Evidence Rule 804(B)(5) states the following:

(5) Statement by a deceased or incompetent person. The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

**{¶107}** The trial court found McFarren could not meet the third requirement because there was no testimony by an adverse party that Mrs. Rinker called out for help to assist her before she fell or adverse testimony as to how Mrs. Rinker fell. I disagree. A review of the deposition testimony shows there is testimony by an adverse party as to whether Mrs. Rinker called out for assistance before she fell. Mrs. Rinker's statement to her grandson was that she was calling out for someone to assist her move from her wheelchair to her bed. There is no dispute that Mrs. Rinker was found by the Emeritus staff at 6:40 p.m. Nurse Shawn Meeks, employee of Emeritus on duty the evening Mrs. Rinker fell, was asked, "Had she screamed at all, to your knowledge, prior to her being

discovered at 6:40 p.m.?" (Meeks Depo., p. 80). Nurse Meeks answered, "No." (Meeks Depo., 80). We find the testimony as to whether Mrs. Rinker was calling out for assistance before she found at 6:40 p.m. falls within the hearsay exception of Evid.R. 804(B)(5).

**{¶108}** The trial court also determined that because there was no testimony from an adverse party as to how Mrs. Rinker fell, Mrs. Rinker's statement explaining how she fell did not rebut the testimony and was therefore inadmissible hearsay. I disagree with the trial court's interpretation of the absence of testimony. Nurse Meeks testified:

Q: Do you know how the fall happened?

A: No, I'm not. I don't know.

Q. Are you aware as to where Mrs. Rinker was trying to go?

(Objection)

A. I don't even remember. I don't even remember if she could tell me.

(Meeks Depo., p. 79). Mrs. Rinker was found parallel to the bed. Mrs. Rinker stated that she was attempting to move from her wheelchair to her bed before she fell. Nurse Meeks was asked if Mrs. Rinker had a walker or wheelchair anywhere within her vicinity or reaching range. Nurse Meeks answered, "I don't recall. I don't recall if there was anything." (Meeks Depo., p. 76).

**{¶109}** Britney Gordon and Ruby Wright were the Resident Assistants on staff the night Mrs. Rinker fell and they saw Mrs. Rinker on the floor of her room. Both Gordon and Wright testified that they had no recollection of the events surrounding Mrs. Rinker's fall. (Gordon Depo., p. 55; Wright Depo., p. 42).

**{¶110}** I would find Mrs. Rinker's explanation of how she fell rebuts the statements of Nurse Meeks, Gordon, and Wright who state they have no recollection of the events surrounding Mrs. Rinker's fall.

**{¶111}** On summary judgment, we must review the evidence in a light most favorable to the non-moving party. The Civ.R. 56 evidence shows that no one on staff at Emeritus that evening recalls Mrs. Rinker in her room before the fall. Mrs. Rinker stated that she was calling out for assistance, but she fell when she attempted to transfer herself from her wheelchair to her bed. McFarren's expert opines different fall preventions that Emeritus should have had in place to prevent Mrs. Rinker's fall. The trial court found that because there was no evidence as to how Mrs. Rinker fell, the expert's opinion as to the deviations of the standard of care were mere speculation.

**{¶112}** In support of her argument that the lack of evidence as to the proximate cause of the fall does not bar her claim, McFarren cites to *Daley v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 73108, 1998 WL 196113 (Apr. 23, 1998). In that case, a patient with Alzheimer's disease was admitted to the hospital. The patient was found lying on the floor of her hospital room with a broken hip. The Alzheimer's disease prevented the patient from communicating the cause of the fall. *Id.* at *1. The family of the patient sued, alleging the hospital failed to take steps necessary to prevent the patient from falling. The hospital argued the family failed to establish proximate causation because the family's expert could not establish the patient's fall occurred as a result of an act of omission on the hospital's part. *Id.*

**{¶113}** The Eighth District Court of Appeals reversed the trial court's decision to grant summary judgment. The court held:

A plaintiff in this type of case is not required to eliminate all possibilities in order to establish proximate cause. Defendant's argument would have the effect of forcing plaintiff to establish causation beyond a reasonable doubt, and that standard is not applicable to civil suits. As a matter of ultimate proof, a plaintiff need only introduce evidence from which reasonable persons may conclude that it is more probable than not that the event was caused by the defendant. *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 252, 272 N.E.2d 97; *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 504 N.E.2d 44.

*Daley v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 73108, 1998 WL 196113, *2 (Apr. 23, 1998).

**{¶114}** The expert in the *Daley* case stated that the patient's fall was more likely to occur because the hospital failed to take measures to prevent the fall. McFarren's expert similarly stated Emeritus's care, or lack thereof, fell below the standard of care and ultimately lead to Mrs. Rinker's fall and death.

**{¶115}** As in the present case, the victim in the *Daley* case could not communicate the reason for the fall. The court noted:

It would be a virtual impossibility in a case like this to show causation where the only person who knows the reason for the fall is incapable of communicating that fact. This is the obvious distinction from slip and fall cases where the victim, although capable of describing a fall, cannot identify the substance causing the fall. Failure to identify the source of the fall is generally not related to proximate cause, but to the duty placed upon the

premises owner under the circumstances. When the slip and fall victim cannot identify the source of the fall, it generally follows that, absent a more particularized duty, a premises owner cannot be expected to warn its patrons against the possible threat because it, too, could not be expected to know of the harm.

*Daley v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 73108, 1998 WL 196113, *3 (Apr. 23, 1998).

{¶116} In this case, there is no question as to duty. The issues are whether there was a breach of the duty of care and if the breach of the duty of care was the proximate cause of Mrs. Rinker's injury. Reviewing the evidence (including the records of Dr. Thomas) in a light most favorable to McFarren, I would find that McFarren met her burden to state a genuine issue of material fact for trial.

{¶117} For these reasons, I would sustain the first, third and fourth Assignments of Error.